UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN
_____

In re: DMITRY LENIKMAN,            Case No. 14-27596-MDM
                                                                                                   (Chapter 7)

           Debtor.
_____

PATRICK S. LAYNG
United States Trustee,

                 Plaintiff,

                                                                         Adversary Case No.

       v.

DMITRY LENIKMAN,

                 Defendant.
_____

**UNITED STATES TRUSTEE'S COMPLAINT TO DENY
DMITRY LENIKMAN'S DISCHARGE**
_____

The United States Trustee, by Attorney Amy J. Ginsberg, pursuant to 11 U.S.C. §§ 727(a) and 727(c), requests that the Court deny Dmitry Lenikman's discharge because he: (1) failed to keep and preserve records; (2) made false statements and omissions in his Schedules and Statement of Financial Affairs; and (3) lied under oath at the first meeting of creditors. In support of this Complaint, the United States Trustee states:

### I. *Jurisdiction and Parties*

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(b)(2)(j) and § 1334. This is a core proceeding, and the United States Trustee consents to entry of a final judgment of the Court.

Amy J. Ginsberg
Attorney for the United States Trustee
Office of the United States Trustee
517 East Wisconsin Avenue, Room 430
Milwaukee, WI 53202
Phone: 414-297-4499; Fax: 414-297-4478

2. The United States Trustee has standing to file this proceeding under 11 U.S.C. § 307 and 11 U.S.C. § 727(c)(1).

3. Venue for this proceeding is in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1409(a).

4. This action arises under 11 U.S.C. § 727(a) and Fed. R. Bankr. P. 7001(4).

5. The Plaintiff, Patrick S. Layng, is the United States Trustee for the Eastern District of Wisconsin and maintains an office at 517 East Wisconsin Avenue, Room 430, Milwaukee, Wisconsin.

6. The Chapter 7 trustee is Steven R. McDonald.

7. The Defendant, Dmitry Lenikman (Defendant), resides at 8687 West Freistadt Road, Mequon, Wisconsin.

8. The extended deadline to object to discharge is March 16, 2015.

9. This adversary proceeding is timely filed.

## II. *Background Facts*

### A. *The Defendant's Bankruptcy Schedules and Statement of Financial Affairs*

10. On June 13, 2014, the Defendant filed for relief under chapter 7 of the United States Bankruptcy Code in the Eastern District of Wisconsin. *See* Docket Entry #1.

11. The Defendant signed statements, under penalty of perjury, indicating that the information reported in his Schedules and the responses in his Statement of Financial Affairs were true and correct. *See* Docket Entry #1.

12. On Schedule B, the Defendant disclosed that he owned $1,505 in personal property: $5 in cash, household s good worth $1,000, and clothes worth $500. *See* Docket Entry #1.

13. On Schedule B, the Defendant did not disclose an interest in any motor vehicle.

2

14. On Schedule B, the Defendant did not disclose an interest in any incorporated or unincorporated business.

15. Upon information and belief, at the time he signed his Schedules, the Defendant operated a sole proprietorship, North Shore Leasing Group.

16. On Schedule D, the Defendant did not disclose any secured creditors.

17. On Schedule E, the Defendant disclosed $20,900 in priority, unsecured debts.

18. On Schedule F, the Defendant listed $223,614 in general unsecured debts.

19. On Schedule G, the Defendant did not disclose any unexpired vehicle leases.

20. The Defendant did not disclose any co-debtors on Schedule H.

21. On Schedule I, the Defendant disclosed that he grossed $3,200 per month as the manager of Best Town Transportation, where he stated he had been employed for six months. *See* Docket Entry #1.

22. In response to Statement of Financial Affairs Question (SOFA) #1, the Defendant disclosed the following income from "salary."

    a.   2014   $16,000

    b.   2013   $40,000

    c.   2012   $40,000

23. In response to SOFA Question #10, "Other transfers," the Defendant checked the box indicating that he had not transferred any property in the two years prior to commencement of this case.

24. In response to SOFA Question #14, "Property held for another person," the Defendant checked the box indicating that he was not holding any property that belonged to anyone else.

25. In response to SOFA Question #18 regarding businesses operated in the past six years, the Defendant disclosed his interest in the following closed businesses:

| Name of Business | Nature of Business | Operating Dates |
|---|---|---|
| a. B & H Transportation | Corporation-transportation | 2009-2013 |
| b. North Shore Group | Sole proprietorship-Auto sales | 2010-2013 |

### B. § 341 Testimony

26. On July 17, 2014, Trustee McDonald conducted the Chapter 7 § 341 meeting. After swearing in the Defendant, Trustee McDonald examined him under oath.

27. Trustee McDonald asked, "Did you carefully review the bankruptcy Petition, Schedules and the Statement of Financial Affairs, in detail, prior to signing them? The Defendant answered, "Yes."

28. Trustee McDonald asked, "Are they accurate and complete?" The Defendant answered, "Yes."

29. Trustee McDonald asked, "Do you have any changes or corrections that you need to make?" The Defendant answered, "No."

30. Trustee McDonald asked the Defendant, "Do you own anything . . . that was not disclosed here?" The Defendant answered, "No."

31. Trustee McDonald asked, "Have you owned or operated a business in the past six years?" The Defendant replied that he had operated B & H Transportation. He further testified that B & H Transportation stopped operating in "September last year [2013]."

### C. Fed. R. Bankr. P. 2004 Order for the Defendant to Produce Documents

32. On November 5, 2014, the Court ordered the Defendant to produce the following documents by November 5, 2014:

a. Promissory note for $200,000.00 that was signed in Illinois during 2008-2009.

b. Profit/loss statements and balance sheets of all of the Debtor's businesses for 2012 through 2014 including (but not limited to) all automotive wholesale businesses in Illinois in which Debtor is a partner, North Shore Group d/b/a Dmitry Lenikman, B & H Transportation, and his wife Olga Chigrinets' company d/b/a Best Town Transportation.

c. List with descriptions of all personal property including (but not limited to) jewelry, clothing, and vehicles.

d. List with descriptions of all business assets including (but not limited to) the assets located at his current residence, any and all rental properties, 9055 North 51st Street, Units A & B, Brown Deer, Wisconsin, and all business locations.

e. All bank statements from all personal and business accounts including (but not limited to:

   i. Chase Bank account number xxxxxx2250;

   ii. US Bank; and

   iii. PNC Bank.

f. List of all property transferred to any person or entity since June 13, 2013.

33. To date, the Defendant has not produced any of the documents ordered by the Court.

### D. Rule 2004 Exam Testimony

#### (1) Lenikman's Rule 2004 Exam

34. On January 6, 2015, Attorney Ginsberg and Trustee McDonald examined the Defendant pursuant to Fed. R. Bankr. P. Rule 2004.

35. The Defendant testified that he did not own a vehicle.

5

36. The Defendant testified that the last vehicle titled in his name was a 2010 Porsche.

37. The Defendant testified that he sold the 2010 Porsche in April or May 2014.

38. The Defendant testified that when B & H Transportation closed in 2013, he sold 10 B & H Transportation vans to Best Town Transportation for $35,000.

39. The Defendant testified that in 2013 B & H Transportation operated at the same time as Best Town Transportation.

40. Initially, the Defendant testified that he drove a mini-van owned by Best Town Transportation.

41. Later in the examination, the Defendant testified that at the time he filed bankruptcy, he drove a leased 2014 Lexus.

42. The Defendant testified that his father drove a 2011 Lexus, leased by Best Town Transportation for his father's use.

43. The Defendant testified that he lives with his ex-wife, Olga Chigrinets (Chigrinets), and their two children.

44. The Defendant testified that Chigrinets owns Best Town Transportation.

45. The Defendant testified that Chigrinets did not pay him $3,200 monthly by check or cash for managing Best Town Transportation.

46. The Defendant testified that in lieu of a $3,200 monthly direct payment, Chigrinets paid his living expenses and collected her child support.

47. The Defendant testified that he no longer works for Best Town Transportation.

48. The Defendant testified that his ex-wife pays all of his living expenses.

### *North Shore Group and North Shore Group Leasing*

49. The Defendant testified that North Shore Group was an automobile wholesale business.

50. The Defendant testified that North Shore Group purchased vehicles and resold them to car dealerships.

51. The Defendant also testified that North Shore Group purchased vehicles and shipped them to a buyer in the Ukraine.

52. The Defendant testified that he received money from the Ukrainian buyer to purchase vehicles for resale in the Ukraine.

53. The Defendant testified that North Shore Group's fee for purchasing vehicles for resale in the Ukraine was $300 per vehicle.

54. Upon information and belief, in 2013 North Shore Group also purchased 30 vehicles financed by creditor Next Gear.

55. The Defendant testified that he used PNC Bank and US Bank for North Shore Group's transactions.

### *(2)* *Chigrinets' Rule 2004 Exam*

56. On March 9, 2015, the United States Trustee examined Chigrinets under Rule 2004.

57. Chigrinets testified that the Defendant continues to manage Best Town Transportation.

58. Chigrinets testified that the Defendant dispatches the drivers to pick up clients.

### E. *Information from the Wisconsin Department of Transportation*

59. Upon information and belief, at the time the Defendant signed his bankruptcy schedules, he had interests in the following vehicles:

   a. Owned vehicles:

   i. 2013 Land Rover truck VIN: SALG2EF9DA102987, owners Dmitry Lenikman and Best Town Transportation, Inc.; and

7

  ii.  2011 Land Rover Sport/Utility VIN: SALSK2D44BA705594, owner Dmitry Lenikman.

 b. Leased vehicles:

  i.  2014 Lexus RX 350 VIN: 2T2BK1BA4EC251904, lessees Dmitry Lenikman and Best Town Transportation, Inc.; and

  ii.  2011 Lexus ES 350 VIN: JTHBK1EG5B2456550, lessees Dmitry Lenikman and Best Town Transportation, Inc.

60. Upon information and belief, the Defendant continued to do business as North Shore Group after December 2013.

61. Upon information and belief, in 2014 North Shore Group purchased a 2014 Chevrolet truck, VIN: 3GNAL4EK4ES56218, and resold the vehicle to Carmax on or about August 20, 2014.

62. On or about January 24, 2014, according to documents produced by Chigrinets, Best Town Transportation purchased four vans from North Shore Group for $29,000.

63. Upon information and belief, at the time the Defendant signed his bankruptcy schedules and SOFA he operated a sole proprietorship, North Shore Group Leasing.

64. Upon information and belief, North Shore Group Leasing owns a 2013 Chevrolet Express and a 2008 Volkswagen Jetta which it leases to third parties.

65. Upon information and belief, North Shore Group's vehicles were secured by a floor plan agreement with Next Gear.

66. Upon information and belief, between January 1, 2013, and January 31, 2014, North Shore Group sold 30 vehicles financed by Next Gear to third parties.

67. The Defendant did not report any income from North Shore Group on Schedule I.

68. The Defendant did not report any income from North Shore Group Leasing on Schedule I.

69. The Defendant did not report any income from North Shore Group in response to SOFA Question #1.

70. The Defendant did not report any income from North Shore Group Leasing in response to SOFA Question #1.

### *Allegations*

### *The Defendant's Discharge Should Be Denied for Failing to Keep Records under § 727(a)(3)*

71. All of the preceding paragraphs are realleged and incorporated herein by reference.

72. Section 11 U.S.C. § 727(a)(3) provides that a debtor shall be granted a discharge unless the debtor conceals or fails to keep or to preserve books and records from which the debtor's financial situation may be ascertained.

73. The Seventh Circuit defined parameters for a matter brought pursuant to 11 U.S.C. § 727(a)(3):

> Section 727(a)(3) requires as a precondition to discharge that debtors produce records which provide creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.

*In re Juzwiak*, 89 F.3d 424, 427-28 (7th Cir. 1996).

74. In *Juzwiak*, the 7th Circuit held that a debtor who only produced bank statements, cancelled checks, checking account records, deposit slips and tax returns failed to keep sufficient records and denied the debtor's discharge.

75. The Court ordered the Defendant to produce his financial documents—documents related to his financial situation—including bank account statements, loan documents

and profit and loss statements. These documents are relevant to the Defendant's income from North Shore Group and his disposition of B & H Transportation's business assets, particularly its vehicles.

76. In addition, the documents requested would shed light on whether the Defendant's ex-wife's company, Best Town Transportation, which the Defendant manages, is a successor to B & H Transportation.

77. The Defendant's counsel acknowledged receiving the Order to Produce Records.

78. In response to the Order to Produce Records, the Defendant claimed:

   a. he failed to keep copies of his personal bank statements and bank statements for B & H Transportation, Inc., North Shore Group or North Shore Group Leasing; and

   b. he failed to prepare profit and loss statements for B & H Transportation, Inc., North Shore Group or North Shore Group Leasing.

79. At his Rule 2004 exam, the Defendant admitted selling vehicles in 2013 and 2014 but failed to keep records related to those transfers.

80. The Defendant failed to keep and preserve ordinary business records, such as bank statements, profit and loss statements and records of vehicles transferred in 2013 or 2014 for his sole proprietorship, North Shore Group.

81. Having demonstrated that the Defendant failed to keep and preserve sufficient records shifts the burden of proof to him to justify his lack of records. *In re Frommann*, 153 B.R. 113, 117 (Bankr. S.D.N.Y. 1993).

82. The Defendant's discharge should be denied under 11 U.S.C. § 727(a)(3).

10

### *The Defendant's Discharge Should Be Denied for Making False Oaths and for Giving False Testimony at His 341 Meeting Pursuant to 11 U.S.C. § 727(a)(4)(A)*

83. All of the preceding paragraphs are incorporated and realleged herein by reference.

84. Section 727(a)(4)(A) provides that the court may not grant a debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case--(A) made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

85. The burden of proof lies with the plaintiff to establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with intent to defraud; and (5) the statement is related to the bankruptcy case in a material way. *In re Tauber*, 349 B.R. 540, 557-558 (Bankr. N.D. Ind. 2006) (citing *[In re] Bailey*, 145 B.R. [919] at 926 [(Bankr. N.D. Ill. 1992)].

#### *a. Statements Under Oath*

86. The first element to determine is whether the Defendant made a statement under oath. Bankruptcy schedules and statements of financial affairs constitute statements under oath.

87. The Defendant's testimony at the § 341 meeting consists of statements made under oath.

#### *b(i). False Statements in the Defendant's Schedules*

88. The next element is whether the Defendant made false statements. Bankruptcy schedules with material misrepresentations or omissions constitute false statements under oath.

89. The Defendant made false statements when he signed the declaration affirming the accuracy of his Schedules and responses to his Statement of Financial Affairs on June 11, 2014.

90. The Defendant made false statements on Schedule B when he omitted his:

    a. Ownership interest in a 2013 Range Rover;

    b. Ownership of a 2011 Range Rover; and

    c. Interest in North Shore Group Leasing.

91. The Defendant made a false statement on Schedule D when he intentionally omitted information about vehicle lienholders. Upon information and belief, the Defendant's 2013 Range Rover and 2011 Range Rover were subject to liens, and the Defendant omitted the secured creditors' security interest in these vehicles.

92. The Defendant made false statements in Schedule G when he failed to disclose his lease of the 2014 Lexus RX 350 and 2011 Lexus ES 350.

93. The Defendant made false statements on Schedule H when he failed to disclose that Best Town Transportation was a co-debtor on the Lexus leases.

94. Upon information and belief, North Shore Group sold four vans for $28,000 to Best Town Transportation on January 24, 2014.

95. The Defendant intentionally failed to disclose this $28,000 in gross income in his Statement of Financial Affairs Question. #1.

96. Upon information and belief, the Defendant made a false statement on Schedule I when he failed to disclose his income from his sole proprietorship, North Shore Group Leasing.

97. Upon information and belief, the Defendant made false statements in his Statement of

Financial Affairs when he failed to disclose any income from North Shore Group Leasing.

98. The Defendant made a false statement in response to SOFA Question #10 when he failed to disclose the transfer of his 2010 Porsche to CarMax in April or May 2014.

### b(ii).     *False Statements at the §341 Meeting Held July 17, 2014*

99. Trustee McDonald asked, "Are they [the bankruptcy Petition, Schedules and SOFA] accurate and complete?" The Defendant answered, "Yes."

100. The Defendant's response is false; his Schedules and SOFA omit information about his business, his vehicles, his income and his creditors.

101. Trustee McDonald asked the Defendant, "Do you own anything . . . that was not disclosed here?" The Defendant answered, "No."

102. This is a false statement; the Defendant had an ownership interest in a 2013 Range Rover and lease interests in a 2014 Lexus RX and a 2011 Lexus ES.

103. Trustee McDonald asked, "Have you owned or operated a business in the past six years?"

104. The Defendant made a false statement when he failed to testify about North Shore Group Leasing in response to Trustee McDonald's question.

### c.     *Knowing and Fraudulent*

105. Once a false oath is demonstrated, the next issue that needs to be addressed is whether the Defendant made these false statements knowingly and fraudulently.

106. The Defendant knew he was driving a 2014 Lexus when he signed his Schedules.

107. The Defendant knew his father was driving a 2011 Lexus when he signed his Schedules.

13

108. The Defendant knew that in 2013 he was buying and selling vehicles using the name North Shore Group.

109. The Defendant knew that he made at least $300 for each vehicle he purchased for resale in the Ukraine.

110. The Defendant knew that he leased vehicles in 2014 to third parties using the business name North Shore Group Leasing.

111. The Defendant knowingly and fraudulently failed to disclose his ownership and leases of vehicles and his income from his sole proprietorships, North Shore Group and North Shore Group Leasing.

### d. Intent to Defraud

112. Rarely is there direct evidence of an individual's intent; intent is frequently demonstrated by a pattern of conduct or a reckless indifference to the truth. *In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992); *In re Miller,* 97 B.R. 760, 762 (Bankr. W.D.N.Y. 1989); *In re Parr*, 13 B.R. 1010, 1021 (E.D.NY. 1981).

113. Once established, the burden shifts to the debtor to go forward with proofs to justify his conduct. *In re Miller* at 765.

114. The aggregate errors and omissions in the Defendant's bankruptcy Schedules and Statement of Financial Affairs and his testimony at the § 341 meeting demonstrate either the Defendant's intent to defraud or his reckless indifference to the truth.

115. The Defendant's failure to produce any bank statements, which he was ordered to produce in November 2014, is evidence of his intent to hinder the Trustee's investigation of his business dealings and income.

### *e. Materiality*

116. Finally, the plaintiff must show that the false statements made by the debtor relate materially to the bankruptcy case.

117. False statements related to a debtor's financial condition are material for the purposes of 11 U.S.C. § 727. *In re Bostrom* 286 B.R. 352, 364 (Bankr. N.D. Ill 2002).

118. The Defendant's omission of his income from North Shore Group is related to his financial affairs.

119. The Defendant's omission of the 2014 Lexus he was driving at the time he filed bankruptcy is related to his financial affairs.

120. The Defendant's business, North Shore Group, sold 10 vans to Best Town Transportation. The Defendant failed to disclose any information about these sales—the date, the sale price and the transferees—in his Statement of Financial Affairs. As a result, Trustee McDonald, creditors, and the United States Trustee were hindered from investigating whether Best Town Transportation is the successor to B & H Transportation.

121. Therefore, the Defendant's intentional failure to disclose income, assets, and transfers are material false statements sufficient to support the denial of his discharge.

### III. Summary

122. A debtor who fails to keep or preserve records should not receive a discharge. A debtor who fails to give complete and accurate information in his Schedules and Statement of Financial Affairs or at his § 341 meeting should not receive a discharge.

123. Therefore, the Defendant's discharge should be denied pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(4)(A) because he intentionally made false statements in his Schedules and

Statement of Financial Affairs, he testified falsely at his § 341 meeting, and he failed to keep or preserve records.

**WHEREFORE,** Plaintiff requests that the Court deny Defendant Dmitry Lenikman's discharge and for such other relief as is just and equitable.

Dated:  March 16, 2015.

                RESPECTFULLY SUBMITTED:

                PATRICK S. LAYNG
                United States Trustee

                _____

                AMY J. GINSBERG
                Attorney for the United States Trustee